# MONTGOMERY McCRACKEN
ATTORNEYS AT LAW

**Georgette Castner**
Admitted in New Jersey & Pennsylvania

LibertyView
457 Haddonfield Road, Suite 600
Cherry Hill, NJ 08002-2220
Tel: 856-488-7700

Direct Dial:   856 488-7794
Fax:           856-488-7720
Email:         gcastner@mmwr.com

October 21, 2019

<u>Via E-Mail</u>   HCarroll@mfmclaw.com

Hon. Harry G. Carroll (Ret.)
MEYERSON, FOX, MANCINELLI & CONTE, P.A.
One Paragon Drive, Suite 240
Montvale, NJ 07645

    Re:   **Lawson, et al. v. Praxair, Inc., et al.**
           **Civil Action No. 3:16-cv-02435-BRM-DEA**

Dear Judge Carroll:

As you know, we represent Defendants/Third-Party Plaintiffs Praxair in the above-referenced matter. Please accept this letter as Praxair's reply to Third-Party Defendant Princeton Healthcare System d/b/a University Medical Center of Princeton at Plainsboro's ("UMCPP") letter of October 7, 2019. We will address Praxair's discovery issues with UMCPP in the order in which they are addressed in UMCPP's October 7th letter.

### III.   Praxair's Discovery Requests

    **A.   The Joint Commission Report is Discoverable**

In its letter dated September 23, 2019, Praxair noted it had not identified any case law or legal authority that supported UMCPP's interpretation that UMCPP is prohibited from producing the Joint Commission report to Praxair when UMCPP is a party to this litigation. Therefore, in the September 23 letter, Praxair contended that UMCPP's assertion that the report is confidential pursuant to 42 U.S.C. §1395bb(b) was in error and Praxair requested that UMCPP produce the Joint Commission report and mark it confidential, if necessary. Praxair further noted an appropriate Discovery Confidentiality Order (Doc. No. 44) is in place in this case that would prevent any public disclosure of the document.

On October 7, 2019, counsel for UMCPP again denied Praxair's request to produce the Joint Commission report. However, this time UMCPP abandoned its argument under 42 U.S.C. §1395bb(b) and now claims that it is privileged pursuant to the Joint Commission on Accreditation and Healthcare Organizations' public information policy, New Jersey's Patient

Montgomery McCracken Walker & Rhoads LLP

Hon. Harry G. Carroll (Ret.)
October 21, 2019
Page 2

Safety Act ("PSA"), and three out-of-state cases that interpret state-specific statutory schemes. None of those sources support UMCPP's assertion that the Joint Commission report is privileged and confidential for purposes of discovery.

First, the Joint Commission's public information policy does not render the report privileged and confidential. The Joint Commission does not have the legal authority to do so, but even if it did, it does not attempt to do so in the policy referenced by UMCPP. In fact, the only reference to confidentiality in the policy can be found on the final page of the document, where the Joint Commission provides a confidentiality statement.[1] The statement, however, merely pledges that the Joint Commission keeps information received or developed during the accreditation/certification process confidential. Praxair is not requesting the report from the Joint Commission, but from UMCPP. Nothing about the Joint Commission public information policy prevents UMCPP from producing the Joint Commission report in discovery.

Second, New Jersey's PSA does not apply to the Joint Commission report; therefore, the self-critical analysis privilege set forth therein also does not apply. The current state of the law regarding New Jersey's self-critical analysis privilege under the PSA is reflected in Brugaletta v. Garcia, 234 N.J. 225 (2018). In Brugaletta, the Court reaffirmed that the privilege is absolute when properly applied; however, the Court also reaffirmed that the scope of the privilege has only a narrow application, stating:

> pursuant to N.J.A.C. 8:43E-10.9, . . . the statutory privilege applies only to documents, materials and information developed exclusively during self-critical analysis conducted during one of three specific processes: the operations of the patient or resident safety committee pursuant to N.J.A.C. 8:43E-10.4, the components of a patient or resident safety plan as prescribed by N.J.A.C. 8:43E-10.5, or reporting to regulators under N.J.A.C. 8:43E-10.6. In the regulations that became effective in 2008, the statutory standard was expanded upon in two significant respects: first, to require that the documents, materials and information at issue be exclusively prepared in the setting of a qualifying self-critical analysis process, and second, to mandate that the self-critical analysis be conducted in accordance with one of three accompanying regulations as a prerequisite for the privilege to attach, N.J.A.C. 8:43E-10.4, -10.5 and -10.6.

---

[1] The policy can be found at the following address: https://www.jointcommission.org/assets/1/18/public_information_policy_final.pdf

5039875v1

> Id. at 243 (quoting C.A. ex rel. Applegrad v. Bentolila, 219 N.J. 449, 468 (2014)) (emphasis added).

Here, the Joint Commission report was not exclusively prepared in the setting of a qualifying self-critical analysis process. Rather, the report was prepared by a third party for the express purpose of accreditation of UMCPP. Even if Your Honor were to find the report was exclusively prepared in the setting of a qualifying self-critical analysis process, the analysis was not conducted in accordance with one of the three accompanying regulations set forth in N.J.A.C. 8:43E-10.4, -10.5, and -10.6. Therefore, the self-critical analysis privilege under New Jersey's PSA does not attach to the Joint Commission report.

Third, the out-of-state cases cited by counsel for UMCPP are not binding in this matter and do not render the Joint Commission report privileged and confidential. All three cases cited by UMCPP: (1) are from some other state, (2) predate New Jersey's PSA, and (3) analyze state-specific statutory schemes. The cases were likely cited, however, because no court in New Jersey has determined Joint Commission reports are part of a healthcare facility's self-critical analysis process, or that same reports are not discoverable. Accordingly, the Joint Commission report is not privileged and confidential based on the out-of-state authority cited by UMCPP. For these reasons, Praxair requests that UMCPP be ordered to produce the Joint Commission report.

**B. UMCPP's Response to Praxair's Third Set of Discovery Requests**

Praxair's Third Set of Discovery Requests, Document Request No. 4 seeks documents for the years 2012 to the present related to "any and all training programs, reporting systems and/or internal tracking systems developed by the Patient Safety Committee relating to the management, handling, storing, transporting and/or use of compressed gas cylinders." UMCPP has advised that they are "not aware of any non-privileged documents[.]" In their October 7th letter UMCPP states that "[a]ny responsive documents withheld by UMCPP on the basis of privilege are so reflected on UMCPP's privilege log." *See* UMCPP's October 7th Response at pg. 7. However, UMCPP's recently-produced privilege log is 86 pages long and includes over 7,000 items and thus it is impossible for Praxair to assess that assertion. Praxair is requesting that UMCPP amend their discovery response to state expressly that no documents are being withheld and identify by bates number the privileged documents (as UMCPP claims are included on its privilege log) that are responsive to this request so that Praxair can assess whether the privilege is being properly asserted by UMCPP.

**C. UMCPP's Reliance on the New Jersey Patient Safety Act Privilege is in Error.**

As mentioned above, the PSA affords an absolute privilege when properly applied, and such broad scope is balanced by its narrow application. Specifically, regulations "require that

the documents, materials and information at issue be exclusively prepared in the setting of a qualifying self-critical analysis process . . . [and] mandate that the self-critical analysis be conducted in accordance with one of three accompanying regulations as a prerequisite for the privilege to attach, N.J.A.C. 8:43E-10.4, -10.5 and -10.6." Brugaletta, 234 N.J. at 243 (quoting C.A., 219 N.J. at 468).

In addition to the strict compliance prerequisite imposed by regulation, the statute itself provides two caveats to the privilege. First, the privilege does not "bar the discovery or admission into evidence of information that would otherwise be discoverable or admissible." Brugaletta, 234 N.J. at 244 (citing N.J.A.C. 26:2H-12.25(h)). "Generally, pursuant to Rule 4:10-2(a), parties may obtain discovery regarding any non-privileged matter that is relevant to the subject of a pending action or is reasonably calculated to lead to the discovery of admissible evidence." In re Liquidation of Integrity Ins. Co., 165 N.J. 75, 82 (2000). Furthermore, "discovery rules are to be liberally construed." Ibid.

Second, the PSA expressly acknowledges the Appellate Division opinion in Christy v. Salem, 366 N.J. Super. 535 (App. Div. 2004), and states its "provisions do not change the discoverability of information or documents obtained from other sources, or in other contexts." Brugaletta, 234 N.J. at 244 (citing N.J.S.A. 26:2H-12.25(k)). In Christy, the Appellate Division held, prior to the enactment of the PSA, that a plaintiff was entitled to purely factual information contained in a hospital's peer-review report but not to deliberative material. The Legislature's express acknowledgment of Christy in the PSA confirms the essential holding of Christy remains good law.

UMCPP's assertion of the privilege afforded by the PSA goes far beyond its proper scope. Specifically, it is quite likely that not all of the documents at issue were prepared in the setting of a qualifying self-critical analysis process, and that UMCPP did not strictly comply with the regulatory requirements for application of the privilege. For example, in UMCPP's October 7 letter, UMCPP claims the root cause analysis was performed by select members of the Patient Safety Committee who held executive positions at UMCPP, thus failing to comply with N.J.A.C. 8:43E-10.4(c)(4) (prohibiting the Patient Safety Committee from acting as a sub-committee) and N.J.A.C. 8:43E-10.4(c) (requiring that the Patient Safety Committee consist of certain individuals). Accordingly, the privilege – which requires strict compliance with the statute - never attached. In any event, under Christy, Praxair is entitled to whatever factual content is contained in the documents at issue.

For these reasons, Praxair respectfully requests that Your Honor conduct an *in camera* review of the documents UMCPP claims are privileged pursuant to the PSA to determine whether the privilege is being properly asserted under the Act. *See Brugaletta*, 234 N.J. at 245 ("[w]hen a requesting party challenges an assertion of privilege, the court must undertake an *in camera* review of the purportedly privileged document or information and make specific rulings as to the applicability of the claimed privilege.").

Montgomery McCracken Walker & Rhoads LLP

Hon. Harry G. Carroll (Ret.)
October 21, 2019
Page 5

Thank you for your consideration of the above issues.

Respectfully submitted,

*s/ Georgette Castner*

Jeremy D. Mishkin
Georgette Castner

cc:  All counsel of record (*via email*)

5039875v1