**MONTGOMERY MCCRACKEN WALKER & RHOADS LLP**
(A Limited Liability Partnership Formed in Pennsylvania)
By:   Paul H. Zoubek, Esquire
      Jeremy D. Mishkin, Esquire (*Pro Hac Vice*)
      Georgette Castner, Esquire
LibertyView, Suite 600
457 Haddonfield Road
Cherry Hill, NJ 08002
(856) 488-7700
*Attorneys for the Praxair Defendants*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AGNES LAWSON, et al., <br><br> Plaintiffs, <br><br> v. <br><br> PRAXAIR, INC., et al., <br><br> Defendants. | Civil Action No.: 3:16-cv-2435-BRM-DEA |
| PRAXAIR DISTRIBUTION, INC., et al., <br><br> Defendants/Third-Party Plaintiffs, <br><br> v. <br><br> PRINCETON HEALTHCARE SYSTEM HOLDING, INC., et al., <br><br> Third-Party Defendants. | |

## THE PRAXAIR DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION APPEALING FROM THE SPECIAL MASTER'S <u>RECOMMENDATIONS DATED NOVEMBER 5, 2019</u>

The Praxair Defendants were compelled to appeal from the Special Master's Recommendations dated November 5, 2019 regarding two issues. First, the Praxair Defendants wish to put an end to the witness coaching on the part of counsel for Plaintiffs and UMCPP

5066565v1

during depositions. Second, UMCPP should be compelled to produce the Joint Commission Report because there is no legal basis upon which to withhold this information.

### A. DEPOSITION MISCONDUCT IN THIS CASE MUST STOP.

Plaintiffs and UMCPP make three arguments in opposition to the Praxair Defendants' Appeal from the Special Master's Recommendations dated November 5, 2019 regarding deposition conduct. First, Plaintiffs and UMCPP argue that their speaking objections are appropriate. Second, Plaintiffs and UMCPP argue that the Court should not consider their deposition conduct during any deposition other than the Dingle deposition Praxair cited as an example in its first application to the Special Master. Third, Plaintiffs argue that the appeal should be denied because Praxair's counsel allegedly engaged in similar conduct. All of these arguments fail to address the reason why Praxair felt compelled to file this motion, because witness coaching during depositions in this case must be stopped through enforcement of this Court's October 26, 2017 Order that "[n]o objections to questions posed at depositions shall be made other than as to lack of foundation, form or privilege." Nonetheless, these arguments will be addressed in turn.

First, UMCPP and Plaintiffs argue that their speaking objections are appropriate "form objections," citing an unpublished district court case from a different circuit, *Abu Dhabi Commercial Bank v. Morgan Stanley & Co., Inc.*, 08-cv-7508 (SAS), 2011 WL 4526141 *8-9 (S.D.N.Y. September 21, 2011), for support. Even in the case cited, however, the Court stated that proper objections to form are to be stated "concisely in a nonargumentative and nonsuggestive manner" and should be limited to the statement "objection as to form and the basis for such objection, *i.e.*, compound question[.]" *Id.* at *8. Plaintiffs' and UMCPP's objections were the complete opposite – argumentative and suggestive. *See e.g.,* Dann Dingle

Deposition Transcript dated September 16, 2019 at 46:7-51:23; 56:15-59:19; 60:22-61:17; 88:23-92:3 and 232:6-19. Thus, this unprecedential opinion from another circuit does not support their argument.

Indeed, counsel for Plaintiffs' and UMCPP's speaking objections are the exact type prohibited by the Courts and under the Rules. See *Applied Telematics, Inc. v. Sprint Corp.*, No. 94-cv-4603, 1995 WL 79237 (E.D. Pa. February 22, 1995). In *Applied Telematics*, the Court stated the following with respect to these types of objections:

> The "attorney may not object to a question that the attorney does not understand. A lawyer's purported lack of understanding is not a proper reason to interrupt a deposition. Nor may the lawyer state for the record what his understanding of the question is. These types of responses by an attorney are irrelevant and suggestive of a particularly desired answer. **If the witness does not understand the question, or needs some language further defined or some documents further explained, the witness can ask the deposing lawyer to clarify or further explain the question."**
>
> [1995 WL 79237 at *2 (citations omitted) (emphasis added)].

UMCPP in particular argues that their conduct is excusable because their speaking objections follow what they characterize as repetitive questioning by the Praxair Defendants' counsel; however, this argument is not supported by the very transcript portion that UMCPP cites in its opposition brief on pages 4-6. Counsel for the Praxair Defendants does *not* ask the same question multiple times, but rather asks several different questions including: 1) did you look at the medical records; 2) did you ask someone to look at the medical records; 3) did anyone else ask someone to look at the medical records; and 4) did you learn whether anyone ever looked at the medical records. Clearly, these are in no way repetitive questions and are certainly

not harassing – they simply are efforts to learn what UMCPP personnel did in their investigation of the accident at issue in this matter. Further, contrary to UMCPP's position, asked and answered objections do not open the door to improper speaking objections, and UMCPP has provided no legal support for this proposition.

Second, Plaintiffs and UMCPP argue that the Praxair Defendants' application is limited to conduct during the Dingle deposition. It is correct that the Praxair Defendants originally raised the issue of witness coaching in its September 26, 2019 letter to the Special Master following the September 16, 2019 deposition of Dann Dingle. On October 30, 2019, the Praxair Defendants conducted the deposition of James Hogle, and despite the fact that the Praxair Defendants had by that time raised deposition conduct issues with the Special Master, counsel for Plaintiffs and UMCPP continued to coach the witness. In a November 1, 2019 letter, the Praxair Defendants were forced again to advise the Special Master of the conduct during the Hogle deposition to demonstrate that the conduct would continue unless the October 26, 2017 Order was enforced. Plaintiffs now argue that any issues concerning the Hogle deposition are waived because the Hogle deposition was not raised in the original September 26, 2019 letter (before the Hogle deposition even occurred), and thus not the subject of Judge Carroll's November 5, 2019 Order.

This argument is meritless. In addition to the fact that both Plaintiffs and UMCPP cited other deposition transcripts in their opposition briefs, the Praxair Defendants used both the Dingle and Hogle deposition transcripts in this appeal purely to illustrate the nature of what is occurring during depositions in this case.[1] The Praxair Defendants did not ask the Special

---

[1] Relatedly, Plaintiffs argue that the examples cited by the Praxair Defendants in their moving brief focus on counsel for UMCPP, and not Plaintiffs' counsel. As an initial matter, the Praxair Defendants cited objections made by Plaintiffs' counsel during the Dingle deposition in

Master, and does not ask this Court, to find that counsel acted inappropriately in a single deposition. Rather, the Praxair Defendants seek enforcement of this Court's October 26, 2017 Order so that it can question witnesses going forward without a constant barrage of speaking objections and witness coaching. Further, to the extent the Praxair Defendants would be constrained to rely only on the Dingle deposition, the conduct is so offensive that it singularly supports Praxair's appeal.

Third, Plaintiffs and UMCPP argue that the appeal should be denied because Praxair's counsel also engages in speaking objections. The Praxair Defendants would be happy to submit full-length videos of all of these depositions so that the Court can view the relative conduct by counsel for the parties. One example cited by Plaintiffs' counsel is directly on point – counsel for the Praxair Defendants asking Plaintiffs' counsel to rephrase a question because Plaintiffs' counsel (hopefully) inadvertently misrepresented the contents of a letter he was showing the witness (Pls.' Opp. Br. at 6). By comparison, here is an example of UMCPP's counsel behavior:

> [Praxair's counsel]: Whether you recall the incident itself, Mr. Dingle, do you recall taking any follow-up steps to address the condition that is represented in the verge report that's Dingle 5?
>
> [UMCPP's Counsel]: Objection to the form of the question. **What condition? I don't know what you mean. Please clarify.**

---

its September 26, 2019 letter to the Special Master. And again, the Praxair Defendants do not seek a finding spotlighting that a specific attorney acted inappropriately on any particular page and line of a transcript, or that conduct was particularly egregious in a single deposition. The Praxair Defendants parsed out illustrative examples, careful to remove the names of specific attorneys in its application, and provided full transcripts so that the Court could understand the context of the conduct. Both counsel for Plaintiffs and UMCPP have engaged in pervasive speaking objections and witness coaching during depositions, the extent of which has impeded the Praxair Defendants' ability to discover facts from witnesses and prepare its defense.

>   [Praxair's Counsel]: You know, I'm going to ask you to
>   stop coaching . . . the witness, Counsel.

[110:18-112:19 (emphasis added).] Contrary to Plaintiffs' and UMCPP's allegations, none of the deposition transcripts or videos illustrate that counsel for the Praxair Defendants' conduct was improper, harassing, or belittling.

Plaintiffs and UMCPP make several additional arguments which rely upon a mischaracterization of the transcripts. One, Plaintiffs believe it is persuasive to tally the number of times counsel for the Praxair Defendants objected during other depositions rather than focusing on the validity of those objections, which Plaintiffs do not even assert were improper – only numerous. It is important to note, moreover that the objections took place over the course of seven (7) full hours of questioning, filling more than 400 pages of transcript, and were in response to the persistent improper questioning by Plaintiffs.

Two, Plaintiffs' opposition brief cites portions of the Martin Frith deposition, which they have truncated to remove the harassing questions asked by Plaintiffs' counsel that led to the cited portions. The full context illustrates exactly what happened, and why Praxair's counsel's conduct was entirely appropriate under the circumstances. (*See* Exhibit A with highlighting of missing text from Frith questioning).

Three, in true contradiction of its own conduct, Plaintiffs argue that Praxair's counsel "improperly refused" to allow questions regarding conversations during a break. However, Plaintiffs' counsel, not UMCPP's counsel, had previously raised the exact same attorney client privilege objection at precisely the comparable point during the examination of a UMCPP witness, Jim Hogle.

>   [Praxair's Counsel]: During the break, did you talk to counsel about this case?
>
>   [Witness]: Yes.

-6-

[Praxair's Counsel]: What did you talk about?

[Witness]:   We just -- I don't know. I don't know exact details. We just kind of were eating lunch.

[Praxair's Counsel]: Well, yeah. It just happened. So what did you talk about?

[Plaintiffs' Counsel]: Objection to the form of the question.

[Witness]:   I don't really understand the question.

[Praxair's Counsel]: No; I'm asking what you talked about with counsel at lunch.

[Plaintiffs' Counsel]: I'm just objecting to the form of the question to the extent that it's privileged under a privileged communication between the client and the attorney.

[Praxair's Counsel]: Well, not in New Jersey under Rule 30, so Federal Rules of Civil Procedure Rule 30. So are you instructing him not to answer?

[Plaintiffs' Counsel]: I'm not instructing him not to answer. I'm just stating my objection.

[Praxair's Counsel]: Okay. So what did you talk about at the conversation?

[UMCPP's Counsel]: I would object to the extent that you're seeking any privileged communications. He stated we sat and had lunch.

[Praxair's Counsel]: Yeah.

[UMCPP's Counsel]:   That's what we did.

[Praxair's Counsel]: Right, but I'm understanding that under Rule 30, when we've come in -- we've got New Jersey case law on this.

[Praxair's Counsel]: So what did you actually discuss? Like the words about this case. I don't care about what was for lunch or anything.

[Witness]:   I'm going to have to defer to counsel.

[UMCPP's Counsel]: **I would instruct him not to answer and talk about the substance of any privileged communications.**

[Praxair's Counsel]: Well -- so okay. So you're instructing Mr. Hogle not to answer? I'm making sure the record is clear. You're instructing Mr. Hogle not to answer the question

-7-

what did counsel discuss with him specifically during a break from when we ended the deposition until now that we just began the deposition?

[UMCPP's Counsel]: He just testified that we sat and had lunch and spoke generally about this case along with many other things.

[Praxair's Counsel]: Right, and I'm asking because I know he knows what the words were, I'm asking what the conversation is and what it was.

[UMCPP's Counsel]: I think he just said that he didn't know what the exact words were.

[Praxair's Counsel]: And I would have to say it happened less than an hour ago. So you would certainly have a memory of what was discussed.

[UMCPP's Counsel]: I would instruct him not to -- to the extent he even remembers exact words, I would instruct him not to answer those questions.

[Praxair's Counsel]: So Mr. Hogle, are you saying you don't understand or you don't remember what you discussed with counsel during a lunch hour that -- after we just reconvened or before we just reconvened?

[Witness]: I'm telling you that our discussions were about, you know, football, my son playing football, and that's about it. Maybe talking about looking at the Praxair document. That's about it. I mean, it was really not a major conversation. It was lunch and that was it.

[Praxair's Counsel]: Yeah, but that's what I'm asking, though. I was just asking -- and your counsel has instructed you not to answer, and what I want to know is what the specific conversation as in the words going back and forth, about what you discussed about this deposition or this case during the break.

[UMCPP's Counsel]: And I would instruct him not to answer.

[Praxair's Counsel]: Okay. We'll take it up with the magistrate.

Hogle Dep. 138:14-141:24. It ill behooves counsel to complain that Praxair's counsel was simply doing what they themselves had previously done.

Four, Plaintiffs cite to a colloquy during the end of the Frith deposition again taken completely out of context. By that time in the Frith deposition, Plaintiffs' counsel had already exceeded the seven (7) hours of questioning permitted under Rule 30. Plaintiffs' counsel represented that he only had five (5) more minutes of questions and as a courtesy, counsel for the

-8-

Praxair Defendants agreed that Plaintiffs' counsel could question its witness for an additional five (5) minutes. The colloquy Plaintiffs quote is following the expiration of the additional time, wherein counsel for the Praxair Defendants is objecting to a second extension of time. All depositions have to end eventually, and the Praxair Defendants had already accommodated Plaintiffs' counsel beyond what the rules require.

Finally, UMCPP suggests that is it entitled to counsel fees for responding to this appeal because the appeal is frivolous. The Special Master already determined that the Praxair Defendants' application was not frivolous in his Recommendations dated November 5, 2019. Accordingly, there is no basis to award UMCPP or Plaintiffs fees in connection with this appeal.

### B. THE JOINT COMMISSION REPORT IS DISCOVERABLE AND SHOULD BE PRODUCED.

UMCPP argues that it should not have to produce the Joint Commission Report because 1) it was prepared a year before the April 10, 2014 incident; 2) it does not concern compressed gas; and 3) it is privileged and confidential.

First, the fact that the Joint Commission Report was prepared a year prior to the incident does not make it irrelevant. In fact, it demonstrates what UMCPP knew prior to the incident.

Second, UMCPP argues that the Report is not relevant because it does not concern compressed gas. The Report is relevant because it concerns prior safety-related events at the hospital that initiated a review process. Thus, the Report is entirely relevant to whether UMCPP was aware of prior safety issues, and how they responded to such issues. Even if the Report does not concern compressed gas specifically, it could show that prior known incidents involving compressed gas did not result in a comparable review process, which would certainly be relevant. Rule 26(b) permits discovery of this sort, and UMCPP certainly has virtually no burden or expense to producing the Report.

Finally, UMCPP argues that the Joint Commission Report is protected by the self-critical analysis privilege embodied by the New Jersey Patient Safety Act. For the reasons set forth in the Praxair Defendants' moving brief, New Jersey's Patient Safety Act ("PSA") does not apply to the Joint Commission Report; therefore, the self-critical analysis privilege set forth therein also does not apply.

Without any support from New Jersey courts, UMCPP suggests that the state-specific interpretations of three entirely different state-specific statutes are somehow instructive in the state-specific application of New Jersey's PSA and self-critical analysis privilege to joint commission reports. UMCPP points to cases relying on state-specific histories of broad interpretation in Wisconsin, Florida, and Texas. *See, e.g., Variety Children's Hosp. v. Mishler*, 670 So. 2d 184, 186 (Fla. Dist. Ct. App. 1996) ("The language in *Cruger* [interpreting statutory intent] is extremely broad.").

UMCPP relies on such cases without any reference to the key differences in the patient safety acts of those states as compared to New Jersey's statute. Additionally, UMCPP fails to recognize that unlike other states, New Jersey courts have not likewise construed the state's PSA broadly. The New Jersey Supreme Court in *Brugaletta v. Garcia*, 234 *N.J.* 225, 243 (2018), affirmed that the scope of the self-critical analysis privilege of the New Jersey PSA has only a narrow application, unlike the judicial interpretations of the other state statutes that UMCPP cites as somehow analogous.

As UMCPP admits, no New Jersey court has decided whether the PSA protects joint commission reports from disclosure in discovery, but the broad interpretations of other state statutes are irrelevant in interpreting *N.J.S.A.* 26:2H-12.25 and certainly do not provide an

answer on this point. For the reasons outlined in the Praxair Defendants' moving brief, the New Jersey statute is inapplicable to the instant Joint Commission Report.

### C.     CONCLUSION

The Praxair Defendants therefore request that this Court order counsel (i) to comply with this Court's October 26, 2017 Order that "[n]o objections to questions posed at depositions shall be made other than as to lack of foundation, form or privilege" and (ii) to refrain from making any further speaking objections during forthcoming depositions. The Praxair Defendants also request that this Court order the production of the Joint Commission Report.

MONTGOMERY, McCRACKEN,
WALKER & RHOADS, LLP

Dated: December 9, 2019      By:    *s/Georgette Castner*
Paul H. Zoubek, pzoubek@mmwr.com
Jeremy D. Mishkin, jmishkin@mmwr.com
(admitted *pro hac vice*)
Georgette Castner, gcastner@mmwr.com
LibertyView, Suite 600
457 Haddonfield Road
Cherry Hill, NJ 08002
Tel: (856) 488-7700
Fax: (856) 488-7720

*Attorneys for Praxair Defendants*

## CERTIFICATE OF SERVICE

I, Georgette Castner, hereby certify that on this date, the foregoing Praxair Defendants' Reply Brief in Support of Their Motion Appealing from the Special Master's Recommendations dated November 5, 2019 and Certification of Georgette Castner, Esquire in support have been served via the Court's CM/ECF system to all counsel of record.


Dated:  December 9, 2019

<i>s/Georgette Castner</i><br>
Georgette Castner

5066565v1