UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AGNES LAWSON, | : |
| Plaintiff(s), | : Civil Action No. 16-2435(BRM)(DEA) |
| v. | : **ORDER** |
| PRAXAIR, INC., et al. | : |
| Defendant(s). | : |

This matter comes before the Court on the following: (1) an appeal by University Medical Center of Princeton at Plainsboro ("UMCPP") objecting to the February 8, 2021 Order of the Special Master [ECF No. 398] denying UMCPP's motion to compel Praxair Distribution, Inc. ("PDI") and Praxair Distribution Mid-Atlantic, LLC d/b/a GTS-Welco ("PDMA") (collectively, "Praxair") to produce a copy of the January 31, 2014 agreement regarding PDI's purchase of PDMA (the "PDMA Purchase Agreement"); (2) a motion by UMCPP to compel Praxair to produce documents responsive to UMCPP's Fifth Set of Requests for the Production of Documents; and (3) a motion by Praxair for a Protective Order and for an award of the fees and costs incurred in responding to UMCPP's motions.

**I. BACKGROUND**

The Court writes for the parties who are familiar with the facts and background of the case, and as such, only facts pertinent to the instant motions are summarized here. Plaintiffs Agnes and Cassius Lawson commenced this action after Ms. Lawson, who was working as a nursing assistant at UMCPP, was injured when a portable oxygen cylinder (the Grab 'n Go Vantage ("GNG")) exploded at the hospital. Plaintiffs filed suit against several entities, including Praxair, alleging product liability and negligence claims. Praxair commenced a third-party action

against UMCPP for breach of contract and contractual indemnification in connection with a Product Supply Agreement ("PSA") executed in 2012 by UMCPP with respect to the distribution of the oxygen cylinder product to the hospital. *See* ECF No. 164 (Praxair's Amended Third-Party Complaint).

According to UMCPP, there were two parties to the PSA -- UMCPP and PDMA. Several years after the 2012 PSA was executed, PDMA merged with and into PDI. UMCPP contends, however, that under the PSA, any indemnification obligation it would have as a result of the underlying incident "is legally and logically limited to those damages incurred" only by PDMA. ECF No. 519. As such, UMCPP has sought discovery on the respective operations of PDI and PDMA at or around the time of the underlying incident.

PDMA started as a joint venture between multiple entities--PDI, GT&S, and Welco-CGI Gas Technologies LLC.[1] In January 2014, a few months before the underlying incident, PDI purchased the shares of the parties to the joint venture and became the sole shareholder of PDMA. According to UMCPP, although PDI purchased PDMA in 2014,[2] it did not fully acquire PDMA until May 2015. Because these corporate dynamics were occurring at or around the time of the underlying incident, UMCPP has sought, *inter alia*, discovery into the role PDMA played in the sale and distribution of the GNGs and the nature of its operations in and around April 2014. As relevant to this motion, UMCPP requested Praxair produce a copy of the 2014 PDMA Purchase Agreement, contending that it may provide information relevant to its defense of the third-party claims regarding the scope of PDMA's operations at the time of the incident.

Separately from its requests for the 2014 PDMA Purchase Agreement, UMCPP had earlier sought to compel Praxair to produce documents and information responsive to its third

---

[1] *See* ECF No. 518-1 at Answer to Interrogatory No. 3.
[2] *See id*.

and fourth sets of discovery, which sought, generally: (1) more specific information and documents concerning the roles of PDMA and PDI related to the GNG; and (2) additional documents and information concerning the joint venture and subsequent merger between PDMA and PDI. In an Order dated November 5, 2019 (the "November 5th Order"), the Special Master substantially granted UMCPP's application as to the first category but denied the application as to the second. As to the second category, the Special Master held that "UMCPP's application seeking additional documentation regarding the joint venture and subsequent merger between PDMA and PDI is [d]enied as to the Third Set of Document Demands, No. 21; the Fourth Set of Document Demands, Nos 3-12; and the Fourth Set of Interrogatories, Nos. 10-11." ECF No. 252.

Thereafter, UMCPP moved before the Special Master to compel Praxair to produce the 2014 PDMA Purchase Agreement. On February 8, 2021, the Special Master denied UMCPP's motion, finding that "UMCPP has not adduced any factual details or legal arguments that warrant a departure from [the] November 5, 2019 ruling denying UMCPP's application seeking additional documentation regarding the joint venture and subsequent merger between PDMA and PDI." ECF No. 398. This appeal followed.[3]

UMCPP also has moved for an Order compelling Praxair to respond to UMCPP's Fifth Set of Requests for the Production of Documents, which seeks additional documents concerning the roles of PDMA and PDI and the timing of their operations. Praxair has not produced anything in response to UMCPP's Requests, pointing to the Special Master's November 5th Order, which Praxair contends forecloses the discovery UMCPP seeks.

---

[3] Applications to the Court had been stayed for a period while the parties engaged in settlement negotiations.

**II. THE PARTIES' ARGUMENTS**

    A. 2014 PDMA Purchase Agreement

UMCPP contends that the Special Master's denial of UMCPP's motion to compel production of the 2014 PDMA Purchase Agreement was erroneous for two reasons. First, UMCPP contends that the Special Master's November 5th Order did not address the production of the 2014 PDMA Purchase Agreement. UMCPP contends that the ruling was limited to UMCPP's request for the production of the 2008 Joint Venture Agreement and the 2015 Merger Agreement. Thus, according the UMCPP, the Special Master should have considered UMCPP's request for the PDMA Purchase Agreement anew, and his failure to do so was either an oversight or error.

Second, if the Special Master had considered the Request as UMCPP contends, UMCPP asserts that the Special Master should have granted UMCPP's application because the 2014 PDMA Purchase Agreement is relevant, proportional to the needs of the case, and discoverable. UMCPP states that it is entitled to discover and understand the nature of PDMA's operations at the time of the underlying incident in order to determine the applicability of the indemnification provision.

Praxair argues that UMCPP's first argument must fail because it "rests on the false premise that the [Special] Master misinterpreted his own prior order." ECF No. 528 at 1. In response to the second argument, Praxair contends that, even if the Special Master had considered UMCPP's request anew, the Agreement sought is irrelevant as a matter of law based on prior rulings by the District Judge and the Special Master in this case. In particular, Praxair points to a decision by the Hon. Brian R. Martinotti, U.S.D.J. on UMCPP's motion to dismiss the Third-Party Complaint. Praxair argues that Judge Martinotti's ruling on UMCPP's motion to

dismiss has already "determined that PDI is a party to the PSA and PDI succeeded to all of PDMA's rights and responsibilities under the PSA as a matter of Delaware corporate law." *Id.*

### B. Motion to Compel

UMCPP seeks an Order directing Praxair to respond to UMCPP's Fifth Set of Requests for the Production of Documents, specifically, Request No. 7 and Request Nos. 11-16. Request No. 7 is a renewed Request seeking the production of the 2008 Joint Venture agreement that was the subject of the November 5th Order. Although the Special Master previously denied UMPCC's request for production of this Joint Venture Agreement, UMPCC alleges that the fact that Praxair's Rule 30(b)(6) witness reviewed the document in preparation for the deposition now makes the Agreement discoverable.

The remaining Requests are as follows:

11. All documents, including but not limited to any agreement that sets for the respective roles of PDI and PDMA for the sale, marketing, and distribution of compressed gases during the time period 2007-2014.

12. All documents stating, referring, or relating to PDMA's operations after January 31, 2014.

13. All documents sent to customers, clients, employees, or affiliates regarding PDMA's status and operations after January 31, 2014.

14. A copy of the paystubs for Joel Todaro, Kevin Brady, and Ken Zusi for the pay periods including February 1, 2014, March 1, 2014, April 1, 2014, May 1, 2014, and June 1, 2014 to reflect the identity of each of their employers (payment amounts may be redacted).

15. A copy of the business card used by Joel Todaro, Kevin Brady, and Kevin Zusi for the time period February 1 - June 1, 2014.

16. A copy of all documents that contain, reflect, or refer to notifications to PDMA employees that their employer will be or has been changed from PDMA to another entity in the time period 2013 - 2014.

According to UMCPP, these Requests are intended to "ascertain[] the scope of PDMA's and PDI's operations during the relevant time period and the timing of those operations." ECF No. 519 at 21. Praxair primarily opposes UMCPP's motion to compel responses to these Requests on essentially the same grounds it opposes the other relief sought in this application, that is, contending that UMCPP has provided the Court with no basis to reverse the Special Master and the documents sought have no bearing on the claims or defenses related to Praxair's indemnification or breach of contract claims.

## III. ANALYSIS

In relevant part, Federal Rule of Civil Procedure 53 states:

(3) Reviewing Factual Findings. The court must decide *de novo* all objections to findings of fact made or recommended by a master….

(4) Reviewing Legal Conclusions. The court must decide *de novo* all objections to conclusions of law made or recommended by a master.

Fed. R. Civ. P. 53(f).  The Court reviews the findings and conclusions of the Special Master accordingly.

The Court approaches any question related to discovery from the perspective that the scope of discovery in federal litigation is broad. Fed R. Civ. P. 26(b)(1). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." *Id.*; *see also Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000). This discovery must also be

"proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The precise boundaries of the Rule 26 relevance standard depend upon the context of each particular action, and the determination of relevance is within the discretion of the district court. *Barnes Found. v. Twp. of Lower Merion et al.*, Civ. No. 96-372, 1996 WL 653114, at *1 (E.D. Pa. 1996).

While the scope of discovery is undoubtedly broad, the Federal Rules also provide that a Court "must limit the frequency or extent of discovery otherwise allowed" if it concludes that: (1) the discovery sought is cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2)(C).

Much of Praxair's opposition and its arguments as to the lack of relevance center on the ruling by Judge Martinotti addressing UMCPP's motion to dismiss Praxair's third-party claims. Praxair contends that "Judge Martinotti determined that PDI is a party to the PSA, and PDI succeeded to all of PDMA's rights and responsibilities under the PSA as a matter of Delaware corporate law." ECF No. 528 at 11; *see also id.* at 16 (arguing that "the Court has already determined that PDI is a party to the PSA and PDI succeeded to all of PDMA's rights and responsibilities under the PSA as a matter of Delaware corporate law."). Praxair further states that "[a]ccordingly, on November 5, 2019, [the Special] Master specifically denied UMCPP's application 'seeking additional documentation regarding the joint venture and subsequent merger

7

between PDMA and PDI[.]'" *Id.* As argued by Praxair, "[t]hese decisions are now the law of the case," and "must be followed." ECF No. 528 at 9.

A closer examination of Judge Martinotti's decision, however, shows that Praxair's reliance on this ruling is misplaced. On July 14, 2016, UMCPP filed its motion pursuant to Rule 12(b)(6) to dismiss the Third-Party Complaint. In that motion, UMCPP argued that PDI was not entitled to indemnification because it was not a party to the PSA. ECF No. 38 at 9. UMCPP argued that "[r]egardless of the subsequent merger" between PDMA and PDI, "at the time of the incident, the entities were separate" and UMCPP "did not contract to indemnify the negligent actions of a separate entity." *Id.* at 10.

On March 27, 2018, Judge Martinotti denied UMCPP's motion as to Counts I (Indemnification) and II (Breach of Contract) of the Third-Party Complaint. ECF No. 128. In doing so, Judge Martinotti found as follows:

> [T]he Court finds Praxair Defendants have adequately alleged [PDI] is entitled to indemnification pursuant to the original PSA. First, the Notice of Removal provides "[PDMA] is a Delaware limited liability company that merged with and into [PDI] (a Delaware corporation) effective May 1, 2015." (ECF No. 1 ¶ 8.) Second, Praxair Defendants' Third-Party Complaint alleges the PSA provides [UMCPP] agreed to indemnify [PDI]. (ECF No. 11 ¶ 5.)

ECF No. 127 at 8. Relying on Delaware General Corporation Law regarding post-merger rights (Del. Code Ann. Tit. 8, § 259), Judge Martinotti further found that

> Praxair Defendants have alleged [PDI] is the successor in interest to [PDMA], and that PDI is a Delaware corporation. The Court finds Praxair Defendants have adequately alleged [PDI] is a party to the PSA for the purposes of a motion to dismiss. *See Phillips*, 515 F.3d at 228. (finding a court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]").

*Id.* at 9.

To summarize, Judge Martinotti found that the Third-Party Complaint adequately pled facts that, *if accepted as true for the purposes of the motion to dismiss and viewed in a light most favorable to Praxair*, showed that PDI is a successor in interest to PDMA and a party to the PSA. Contrary to the assertions of Praxair, Judge Martinotti's decision did not establish, on the merits, "that PDI is a party to the PSA and PDI succeeded to all of PDMA's rights and responsibilities under the PSA as a matter of Delaware corporate law." ECF 528 at 16. Indeed, the purpose of a motion under Federal Rule of Civil Procedure 12(b)(6) is to test the legal adequacy of the pleading. The veracity of the facts pled are then tested at later stages in the litigation after the parties have had a chance to gather evidence related to those facts through the discovery process. As such, Judge Martinotti's decision does not foreclose or render irrelevant, as Praxair argues, any discovery relating to the operations and or corporate status of PDI and/or PDMA at or around the time of the underlying incident.

As the Court noted earlier, discovery in federal litigation is broad and relevance, in particular, is construed broadly. *See Gardner v. Boone*, No. 19-5572, 2023 WL 1927992, at *2 (E.D. Pa. Feb. 9, 2023) (defining relevance in the context of discovery as "encompass[ing] any matter that could bear on, or that could reasonably lead to other matter that could bear on any issue that is or may be in the case."). The issues in this litigation have evolved over its course, and given the matter's present posture, the indemnification issues are of particular significance. Having considered "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit," Fed. R. Civ. P. 26(b)(1), the Court finds that both the 2014 PDMA Purchase Agreement and 2008 Joint Venture agreement are relevant to the

claims and defenses in connection with Praxair's Third-Party Complaint and are discoverable. These documents relate to the scope of PDMA's operations prior to the underlying incident, which may bear on the scope of UMCPP's potential indemnification obligation. Praxair is directed to produce them.[4]

As to the remaining discovery Requests 11-16, Praxair argues that these requests relate to the PDI/PDMA merger and therefore should be denied based on the Special Master's earlier rulings, and Praxair further contends that these requests are irrelevant and overbroad. First, the Court, being obliged to review issues *de novo*, disagrees that the any ruling by the Special Master can and should foreclose this discovery. Second, much like the Agreements discussed above, the Court finds that the information sought by the Requests is relevant to the claims and defenses in Praxair's Third-Party Complaint. Finally, as to the breadth of the requests, UMCPP has indicated a willingness to narrow the scope of what it is seeking. For example, it has stated that with respect to Request No. 11, it "is not interested in all agreements and documents concerning other products" and "has no objection to limiting the documents sought to those concerning the roles of PDI and PDMA regarding the sale, marketing, and distribution of the GNG from 2007-2014." ECF No. 531 at 9. With respect to Request No. 12, UMCPP has stated that it "is not interested in 'merger' documents" but rather seeks "documents sufficient to ascertain PDMA's operations, the cessation of their operations after January 31, 2014, and what role PDMA played during … the transition period" in light of its alleged indemnification obligation. *Id.* Consequently, the Court will grant UMCPP's motion to compel but direct the parties to meet and confer to clarify and narrow the scope of the materials sought.

---

[4] To the extent Praxair has raised concerns of confidentiality, discovery materials may be produced pursuant to terms the Discovery Confidentiality Order in this case. *See* ECF No. 44.

## IV. CONCLUSION AND ORDER

The Court has carefully considered the submissions of the parties, and for the reasons set forth above,

**IT IS** on this 28th day of April 2023

**ORDERED** that UMCPP's motion to compel [ECF No. 518] is GRANTED and UMCPP's objection to the February 8, 2021 ruling of the Special Master is sustained; and it is further

**ORDERED** that Praxair is to produce the 2014 PDA Purchase Agreement and the 2008 Joint Venture Agreement within 14 days of the date of this Order; and it is further.

**ORDERED** that the within 21 days of the date of this Order, the parties are to meet and confer regarding the scope of Requests Nos. 11-16, and responses to those Requests are to be served within 30 days after the parties meet and confer; and it is further

**ORDERED** that Praxair's motion for a Protective Order and for fees and costs is DENIED.

                                                     *s/ Douglas E. Arpert*
                                                    DOUGLAS E. ARPERT, U.S.M.J.

--terminates ECF No. 518