<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| AGNES LAWSON, *et al.*,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>PRAXAIR, INC., *et al.*,<br><br>　　　　　　　Defendants. | Civil Action No. 16-2435 (RK)(DEA)<br><br>**MEMORANDUM ORDER** |

<u>**ARPERT, United States Magistrate Judge**</u>

　　This matter comes before the Court upon Defendant and Third-Party Plaintiffs Western/Scott Fetzer Company ("Western") and Praxair, Inc.'s ("Praxair") (collectively "Defendants") and Third-Party Defendant University Medical Center at Princeton at Plainsboro's ("UMCPP") joint letter to the Court dated February 9, 2024 disputing Wendall Hull Associates' ("WHA") role as incident-cylinder tester in this matter and how such testing should proceed. (ECF No. 570.) Western and Praxair's positions on whether WHA should be permitted to complete cylinder testing and whether there should be prior restrictions on its report were included in a prior joint submission dated December 15, 2023. (ECF No. 565.) After consideration of the parties' submissions, and for the reasons outlined below, the Court finds that WHA should proceed as tester in this matter and expeditiously begin testing as previously directed by the Court and agreed by the parties in March 2018.

1

I.  **BACKGROUND**

    A.  **Factual Background**

As all parties are intimately familiar with the facts underlying this matter, the Court recites only the facts necessary to contextualize the current discovery dispute. On April 10, 2014, Plaintiff Agnes Lawson ("Lawson") was injured by the explosion of a Grab n' Go oxygen tank (the "Incident Cylinder"). (Parties' Joint Letter 2, ECF No. 570.). Sometime after Lawson's injury, WHA was commissioned by the United States Department of Transportation ("DOT") to conduct an inspection and render a report as to what caused the Incident Cylinder's explosion. (*Id.*)

On March 21, 2017, WHA rendered a report which, in part, concluded that the fire that caused the Incident Cylinder to explode did not occur in a regulator manufactured by Western.[1] (*Id.*) WHA at that time, however, could not complete its inspection of the Incident Cylinder because a "destructive opening of the [Incident Cylinder] to analyze hydrocarbon residue" had yet to be completed. (*Id.*) To this final step, Lawson objected to WHA's role in completing the testing. (*Id.*) Lawson also disagreed about what protocol should be employed in conducting the destructive opening ("Final Testing") and what WHA could say in its final report subsequent to Final Testing. (*Id.*) UMCPP, however, made known no similar objections. (*See id.*)

On January 16, 2018, with respect to Final Testing protocols, after some back and forth between Western and Lawson, this Court held a status conference and directed the parties to submit questions to WHA in order that WHA could address the parties' concerns and finalize a Final Testing protocol. (*Id.*) On March 12, 2018, WHA provided its responses to the parties' joint questions and quoted a final protocol and pricing for the parties. (*Id.* at 3; *see also* Western Ex. B,

---

[1] Western contends that "[c]ounsel for . . . Lawson object to WHA's completion of testing because WHA's report was largely favorable to Western. (Parties' Joint Letter 2.)

ECF No. 570-3.) All parties to this litigation, including Western, Praxair, and UMCPP, received WHA's protocol recommendations, and all parties, including UMCPP, agreed to move forward based on the Final Testing protocol WHA provided. (*Id.*; *see also* Western Ex. C, ECF No. 571.) On March 19, 2018, after all parties agreed to WHA's Final Testing protocol, Lawson's counsel wrote to this Court, on behalf of all parties, stating, "[a]ll parties have consented to WHA's proposal and the parties now intend to ask WHA to proceed with the testing using the suggested protocol contained in WHA's March 12, 2018 letter [("2018 Testing Proposal")]." (Parties' Joint Letter 3; Western Ex. D, ECF No. 570-4.)

On March 23, 2021, after the parties' had focused their litigation efforts in this matter elsewhere, Western reraised the Final Testing issue and applied to the Discovery Master for an Order to begin testing. (December 15 Joint Letter 2, ECF No. 565.) Lawson once again opposed WHA's involvement as tester, contending on this occasion that WHA was not a neutral tester due to previous dealings between Western and WHA. (*See id.*)

Shortly thereafter, on May 18, 2021, the Discovery Master issued a decision ordering the completion of testing and responding to Lawson's contentions regarding WHA's neutrality. (Discovery Master's Order, ECF No. 436.) Specifically, the Discovery Master concluded that "Plaintiffs' challenges to WHA's neutrality are best left to the trial court when determining the admissibility of WHA's test results." (*Id.*) The Discovery Master also mandated certain safeguards to Final Testing in an effort to ensure WHA's neutrality.[2] (*Id.*)

---

[2] These safeguards were, in pertinent part: (1) "[a]ll parties shall have the right to have an expert present when the cylinder is opened and the scraping of any residue occurs, and to record this process should they so choose"; (2) "the raw data shall be provided to all parties"; and (3) Plaintiffs' expert shall be provided a split-sample of the residue, if any, found in the cylinder. (Discovery Master's Order 3.)

Subsequent to the Discovery's Master's decision, Lawson, unsatisfied with his Order, appealed. (*See* ECF No. 474.) The appeal, however, was administratively terminated when the parties commenced mediation in September 2021. (*See id.*) UMPCC never joined Lawson's appeal or otherwise made known that it had concerns about WHA's neutrality. (*See id.*)

Finally, after testing was further delayed as this matter progressed, on September 8, 2023, this Court ordered that Final Testing proceed "promptly" so that the Court could efficiently move this matter towards a resolution. (Parties' Joint Letter 4.) At that time, UMCPP did not object to the Order to proceed, nor did UMCPP raise any concerns about WHA, WHA's involvement in Final Testing, the 2018 Testing Proposal, Lawson's appeal of the Discovery Master's Order, or the scope of WHA's testing and report. (*Id.*)

On October 26, 2023, this Court held another status conference during which, for the first time, UMCPP raised concerns about WHA's neutrality and Final Testing. (December 15 Joint Letter 5.) As to whether there was a Final Testing protocol, UMCPP contended in a December 15, 2023 correspondence that a December 5, 2023 email from WHA's Dr. Barry Newton ("Newton") suggesting that WHA was working on a more detailed protocol for handling Final Testing established that there was no Final Testing protocol in this case. (Parties' Joint Letter 4,

8.)³ As to WHA's neutrality, UMCPP primarily challenged the scope of WHA's Final Testing reporting arguing that WHA's belief that it could "interpret" and "characterize" the Final Testing results despite its previous business dealings with Western establishe[d] that WHA [was] not a neutral factfinder. (December 15 Joint Letter 5.)

In light of UMCPP's most recent objections, this Court directed the parties' to file correspondence addressing the outstanding issues pertaining to Final Testing. The parties' filed such correspondence on December 15, 2023 and February 9, 2024, and the Court now considers their respective positions.

## II.   DISCUSSION

None of UMPCC's objections to Final Testing and WHA's involvement in it are persuasive. Ultimately, UMCPP's objections to Final Testing are two-fold. First, UMCPP questions WHA's neutrality because the Discovery Master's 2021 Order failed to articulate what "WHA should be permitted to do or say." (Parties' Joint Letter 7.) To this end, UMCPP attempts to revitalize Lawson's previously terminated appeal of the Discovery Master's 2021 Order. (*Id.*) Second, UMCPP contends that the 2018 Testing Proposal was not a final protocol and, therefore,

---

³ Nothing in the record establishes that WHA was ever informed that the parties had agreed to the 2018 Testing Proposal or that WHA was aware of all parties' agreement to its terms. (*See* Western's Ex. C; *see also* Western's Ex. D. (stating in correspondence to the Court that all parties consented to the 2018 Testing Proposal and that the parties "now *intend* to ask WHA to proceed with the testing using the suggested protocol." (emphasis added)); *see generally* UMCPP's Exs., ECF No. 570-6.) UMCPP's only attempt to rebut this fact is highlighting the following statement from a WHA representative: "My understanding is that there have been several proposed protocols (and maybe even more than one that has been agreed upon)." (Parties' Joint Letter 9.) This statement does not support a finding that there was no agreement as to the 2018 Testing Proposal. If anything, WHA's statement only supports the notion that WHA was never informed that the parties had agreed to the 2018 Testing Proposal because it suggests that WHA is unsure what, if any, proposals were agreed to by the parties.

testing cannot continue until the parties agree on a final testing protocol. (*Id.* at 8.) The Court rejects both objections.

### A. WHA's Neutrality and Revitalizing Lawson's Appeal

UMCPP attempts to revitalize Lawson's previous appeal of the Discovery Master's 2021 Order by adopting Lawson's arguments that WHA is not a neutral tester because of: (1) its previous dealings with Western; and (2) a lack of constraints upon what "WHA should be permitted to do or say." (Parties' Joint Letter 5-7.)

First, and importantly, UMCPP never appealed, joined, or otherwise expressly indicated that it shared Lawson's concerns with WHA operating as a tester until October 26, 2023. (*See* December 15 Joint Letter.) UMCPP's attempt to now claim it "had grave concerns about the conflict issues raised in Plaintiffs' appeal" in 2021 but thought that it should keep these concerns to itself for the sake of "compromise" is unconvincing. (Parties' Joint Letter 6.) The Court finds that if UMCPP sincerely had "grave concerns" about WHA's neutrality as tester,[4] it should not have waited over two years to raise concerns simply because WHA indicated it was prepared to "interpret" and "characterize" its Final Testing findings. (December 15 Joint Letter 5-6.) For this reason, the Court finds sufficient reason to reject UMCPP's request to revitalize Lawson's former appeal of the Discovery Master's Order simply because such appeal is now untimely.

Second, even if this Court entertained an appeal by UMCPP, the Court agrees with the Discovery Master's finding that any neutrality concerns should be addressed in a motion in limine.

---

[4] To this end, the Court also notes that the DOT, not Western, originally selected WHA as the tester in this matter. The Court finds it unlikely that the DOT would have selected WHA as a tester if there was a clear neutrality issue. As the Discovery Master noted, "it appears uncontroverted that WHA was initially recognized by the [the DOT] as a laboratory that was qualified to perform this type of testing on the oxygen unit." (Discovery Master Order 3.)

(*See* Discovery Master's Order.) Specifically, UMCPP should only be permitted to formally challenge WHA's neutrality *after* Final Testing is complete and *only if* UMCPP has an identifiable basis to argue that WHA exhibited bias in its testing or reporting. (*See id*.) Moreover, UMCPP's contention that the Discovery Master's Order is unclear as to the scope of what WHA "should be permitted to do or say" does not change this Court's analysis. (Parties' Joint Letter 7.) Again, if UMCPP has any concern that WHA overstepped its bounds after Final Testing or in its reporting, UMCPP may file a motion in limine to exclude such evidence.

Ultimately, this Court will not speculate as to whether WHA's reporting will, in fact, be biased, or whether the Discovery Master's conditions attempting to maintain a neutral test will be unsuccessful. Accordingly, UMCPP's request to revitalize and adopt Lawson's appeal and/or further challenge WHA's role as tester is denied. As such, the Discovery Master's 2021 Order remains in full effect and its conditions binding on the parties and WHA for Final Testing.

        **B.**        **Final Testing Protocols**

UMCPP also relies on recent a WHA communication to suggest that WHA does not believe there is a final agreed-to testing protocol in this matter. (Parties' Joint Letter 8.) From this assumption, UMCPP contends WHA's recent communication proves that there was no Final Testing protocol agreed to in this case and that WHA must issue a new proposal that UMCPP agrees to before testing can be conducted. (*See id.* at 8-9.)

As spelled out above, on March 12, 2018, WHA emailed all parties the 2018 Testing Proposal. By March 19, 2018, all parties agreed to that protocol as written, *including UMCPP*. (Western's Ex. C.) These two facts alone render UMCPP's contention that the 2018 Testing Proposal was not final unpersuasive. To be clear, the fact that WHA may not have been informed

that the 2018 Testing Proposal was final does not negate the fact that UMCPP agreed to proceed with testing as WHA proposed in March 2018.

Moreover, the Court finds it significant that nothing in the record clearly establishes that WHA was ever informed that the parties agreed to the 2018 Testing Proposal or that WHA was aware of all parties' agreement to its terms. (*See* Western's Ex. C; *see also* Western's Ex. D. (stating in a correspondence to the Court that all parties consented to the 2018 Testing Proposal and that the parties "now intend to ask WHA to proceed with the testing using the suggested protocol." (emphasis added)); *see generally* UMCPP's Exs., ECF No. 570-6.) As such, it is entirely possible, if not likely, that WHA was never made aware that the 2018 Testing Proposal was accepted as final. Therefore, the Court rejects UMCPP's contention that this Court should infer solely from WHA's lack of a clear understanding as to the 2018 Testing Proposal's finality that there is no final, agreed-to proposal for Final Testing in this case. The Court instead finds that testing should proceed in accordance with the 2018 Testing Proposal.

### III. CONCLUSION

For the reasons outlined above,

**IT IS** on this 22nd day of February 2024 **ORDERED** as follows:

1. UMCPP's request to reinstate Lawson's appeal of the Discovery Master's 2021 Decision is **DENIED**.

2. Final Testing of the Incident Cylinder should proceed expeditiously, in accordance with the 2018 Testing Proposal and the conditions set forth in the Discovery Master's Order.

3. The Parties' must submit a joint report as to the proposed time for completion of testing and production of WHA's report to the Court by March 31, 2024.

s/Douglas E. Arpert<br>
**DOUGLAS E. ARPERT**<br>
**UNITED STATES MAGISTRATE JUDGE**